JACOB LEISTER, Appellant, v. ROLLA WELLS, Receiver of United Railways Company of St. Louis.

Division One, July 31, 1923.

1.  **NEW TRIAL: Newly Discovered Evidence: Diligence: Impeachment.** It is not an arbitrary exercise of the trial court's discretion, to deny a motion for a new trial based on newly discovered evidence, where the motion and affidavits show that the applicant knew the witnesses by whom he expected to disprove certain testimony developed upon a former trial, and used no diligence to obtain such evidence.   Nor is newly discovered evidence for mere impeachment purposes looked upon with favor.   And where the alleged newly discovered evidence is immaterial, cumulative, designed for impeachment only and that on an immaterial point, and no diligence is shown, the appellate court will not interfere with the order of the trial court overruling the motion.

2.  **NEGLIGENCE: Street Car: Projection of Arm Through Window: Action Based on Different Theory.** It is not in every instance that a passenger who permits his arm to project somewhat from a street-car window and is injured by its contact with something beside the car is guilty of such contributory negligence as bars his recovery as a matter of law.   But where he testified that his arm did not protrude from the window and that in the manner in which he was sitting and resting his arm on the sill it did not and could not project beyond the rods which guarded the window, and he pleaded a collision and the only instruction he asked submitted the case on that theory, he cannot complain of an instruction given for defendant which precluded a recovery on the theory that he had placed his arm so that it projected from the window beyond the plane of the side of the car and that defendant negligently moved the car in such close proximity to a nearby truck that his arm struck it.   The instruction merely confined his case to his own theory, and his testimony excluded from the case every other theory.

Leister v. Wells.

3. ———: **Instruction on Accident: Invited by Appellant.** Where plaintiff's instruction brings the theory of accident into the case, he cannot complain that an instruction given for defendant telling the jury that if his injury was the result of accident as distinguished from negligence defendant is not liable, although there was no evidence authorizing the giving of such an instruction. A litigant cannot complain of self-invited error.

4. ———: **Instruction to Disregard Testimony in Conflict With Physical Facts.** An instruction telling the jury that "if you believe the statements of any person testifying in this case are contrary to the physical facts shown to exist by the evidence you should disregard his statements for that reason" might be understood as a direction to the jury that, if they found a witness had made any statement material or immaterial to be in conflict with the physical facts, to disregard all testimony of such witness, and therefore would be misleading in ordinary cases. But where plaintiff offered no testimony on the merits except his own, and he does not complain of the effect of the instruction upon the testimony of the witnesses for defendant, and the case shows no evidence of any physical fact which conflicts or tends to disprove his statements except facts which, if found to exist, absolutely negatives his testimony and the allegations of his petition, the case is not an ordinary one, and the instruction was not prejudicial to him.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*S. P. Bond* and *George Barnett* for appellant.

(1) The court erred in granting at defendant's instance and request, and over the objection and exception of plaintiff instruction numbered three. (a) The instruction improperly and erroneously declared the law, for the reason that it required the jury to believe that the street car actually came in contact with the truck, in order for plaintiff to recover. Under the pleadings and the law, even though the street car may not actually have come in contact with the truck, still if the defendant negligently undertook to pass the truck in such close proximity thereto that plaintiff's elbow came in contact

with the truck, the plaintiff was entitled to recover, unless the jury may have believed that the plaintiff failed to exercise ordinary care for his own safety, by reason of the extent to which plaintiff's elbow may have been protruding outside the car. This instruction is predicated upon the theory that if plaintiff's elbow was outside the car, even to the slightest extent, then as a matter of law, plaintiff was not entitled to recover. This is not the law. Barton v. Railroad Co., 52 Mo. 253; Smith v. Transit Co., 120 Mo. App. 328; Miller v. Railroad Co., 5 Mo. App. 471; Gage v. Transit Co., 211 Mo. 152. (b) The instruction is erroneous for the reason that it constitutes a comment on the evidence. Rice v. Bridge & Tr. Co., 216 S. W. 746. (c) The instruction is erroneous, because it singles out a certain fact, and gives it undue prominence. Kepley v. Realty Co., 200 S. W. 756; Derrington v. Poplar Bluff, 186 S. W. 561; Quinn v. Van Raalte, 205 S. W. 68; Gott v. Rys. Co., 222 S. W. 827; Disbrow v. Ice Co., 138 Mo. App. 56. (2) The court erred in granting instruction numbered four. (a) The instruction improperly and erroneously declared the law, for the reason that the instruction precludes recovery in the event the plaintiff's elbow was protruding beyond the side of the car, without reference to whether the jury believed the plaintiff was thereby guilty of negligence. Under the pleadings and the law, the plaintiff was entitled to recover, if he exercised reasonable care for his own safety and if the defendant negligently drove its car so close to the truck as to catch and injure his arm. The instruction denied the plaintiff the right to recover on this theory. Barton v. Ry. Co., 52 Mo. 253; Smith v. Transit Co., 120 Mo. App. 328; Miller v. Railroad Co., 5 Mo. App. 471; Gage v. St. Louis Transit Co., 211 Mo. 152. (b) The instruction is erroneous for the reason that it constitutes a comment on the evidence. (c) Because the instruction assumes the fact to be that plaintiff had his elbow extending out and beyond the line of the street car. Moon v. Transit Co., 247 Mo. 237. (d) Because

the instruction is argumentative. Pasche v. Tower Sets Co., 190 S. W. 30; Eads v. Galt Tel. Co., 199 S. W. 710. (3) The court erred in granting instruction numbered five. The instruction was misleading in that it might have led the jury to believe that they should, in the event any statement made by the plaintiff contradicted the physical facts, it was their duty to disregard all his testimony. In directing the jury to disregard the statements of plaintiff the instruction should have been confined to such statements as contradicted the physical facts. Furthermore, the instructions should have been limited to substantial or material physical facts in the case. White v. Lowenberg, 55 Mo. App. 69; Klein v. Sealey, 257 Mo. 527. This instruction is apparently aimed at the plaintiff's testimony to the effect that he did not have his elbow extending out beyond the side of the street car. Even though the jury may have believed that through ignorance or mistake plaintiff stated this fact, and that the statement contradicted the physical facts, still the jury may have disregarded this statement and adopted the rest of plaintiff's story and the conclusion drawn from the physical facts, even though shown by defendant, and still have found for plaintiff. Wagner v. Pryor, 204 Mo. App. 478; Huff v. Railway, 213 Mo. 495. (4) The court erred in giving instruction numbered six. (a) Under the facts of the case the injuries resulted either from the negligence of defendant, or the concurring negligence of defendant, and the contributory negligence of plaintiff. Under such circumstances an instruction on the theory of an accident is unauthorized and erroneous. Beard v. Mo. Pac. Ry. Co., 272 Mo. 142. (b) The instruction is repugnant to instruction numbered one. Certainly a presumption of negligence and an accident are not consistent. Stoffer v. Dunham, 208 S. W. 641. (5) The court erred in refusing to grant plaintiff a new trial inasmuch as the affidavits filed by plaintiff as to newly discovered evidence, plainly entitled plaintiff to a new trial. R. S. 1919, sec. 1453.

*T. E. Francis, Charles W. Bates* and *Nortoni, Moore, Breaker & Green,* for respondent.

(1) The books abound with cases in which judgments are affirmed though erroneous instructions were given, when it appears that the error was invited by the complaining party, in the view that the case should be disposed of on appeal on the same theory on which it was tried, and for the further reason that it is not error on the part of the trial court to proceed on a theory pursued by both parties. Simpson v. Wells, 237 S. W. 528; Merrielees v. Wabash Ry. Co., 163 Mo. 470; Keele v. Railroad Co., 258 Mo. 62; Chinn v. Naylor, 182 Mo. 595; Walker v. Wabash Ry Co., 193 Mo. 483; Holmes v. Braidwood, 82 Mo. 610; Hays v. Bunch, 91 Mo. App. 471; Spain v. Ry. Co., 190 S. W. 358; Mitchell v. Brown, 190 S. W. 356; Boatmen's Bank v. Union Trust Co., 205 S. W. 629. (2) The court "shall in every stage of the action disregard any error or defect which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect." Secs. 1276, 1513, R. S. 1919. Self-invited error, if error there be, cannot affect the substantial rights of the "adverse party" who invites it. When these statutes are considered, "there is a wide difference between conceivable error and reversible error." Shinn v. United Rys. Co., 248 Mo. 173. (3) Plaintiff could not have received an injury in the manner he describes, with his arm wholly within the car, by means of some portion of the standing truck coming into the window of the moving car and then going out again. The indisputable laws of physics attest otherwise, and, therefore, the court should have directed a verdict for defendant. Lange v. Met. St. Ry. Co., 151 Mo. App. 505. (4) Although the petition may have been formulated with a view of conveying a general charge of negligence, it lays a specific act of negligence in charging that plaintiff received his injury "by reason of the negligence and carelessness of defendant in permitting its

car, as aforesaid, on said line, at said point, to collide with said truck-stake wagon, projection thereof or therefrom.'' Zaszmowick v. Am. Mfg. Co., 190 S. W. 802; Pointer v. Const. Co., 189 S. W. 808; McGrath v. Transit Co., 197 Mo. 105; Chitty v. Ry. Co., 148 Mo. 63; Orcutt v. Century Bldg. Co., 201 Mo. 424; Roscoe v. Met. St. Ry. Co., 202 Mo. 576; McCarty v. Hotel Co., 144 Mo. 402; Fuchs v. St. Louis, 167 Mo. 620.    (a)    Plaintiff must stand or fall under the foregoing specific charge of negligence.    Northam U. Rys. Co., 176 S. W. 229; McGrath v. Transit Co., 197 Mo. 105.    (b)    Plaintiff directed his testimony to this specific negligent act of a collison charged.    (c)    The specific act of causing the street car to collide with the truck, or some portion thereof or therefrom, charged in the petition, being thus supported by direct testimony on the part of plaintiff himself, his counsel in plaintiff's first instruction interpreted his petition and his evidence as tendering a specific issue of fact with respect to the cause of the alleged injury, by requiring the jury to find ''and if you believe from the evidence that the street car on which plaintiff was a passenger (if you believe he was a passenger thereon) collided with the truck, stake wagon, projection thereof or therefrom,'' etc.    (d)    The converse of this issue so framed and put to the jury by plaintiff clearly was and is that set forth in respondent's Instruction 3, to the effect that if the street car did not come in collision with the truck ''or any portion thereof or therefrom, then plaintiff is not entitled to recover.''    And respondent's Instruction 4, to the effect that if the jury believe that plaintiff's injury was caused by his having his arm outside of the street car and as a result thereof it came in contact with the truck, and if the jury further believed ''that the truck or any portion thereof was not sufficiently near to the street car to come in contact therewith, then plaintiff was not entitled to recover.''    These instructions clearly submitted, from defendant's standpoint, the issue concerning the specific charge of negligent collision

with the truck, or some projection thereof or therefrom, which plaintiff tendered and invited. (5) "Plaintiff cannot plead one cause of action and recover upon another not pleaded, notwithstanding the other would be a good cause of action if properly pleaded." Chitty v. Railway Co., 148 Mo. 64. (6) Respondent's Instruction 4 is moreover a proper declaration of law on the question of proximate cause and causal connection. The negligent act charged being a collision by the street car with the truck or some projection thereof or therefrom, then if the jury should find, as required in this instruction, that there was no such collision because the truck was not sufficiently near to the car and that the plaintiff received an injury not because of such collision, but because his arm was outside the line of the car, which brought it into contact with the truck sufficiently removed from the car to be otherwise safe, it is clear there was no causal connection between the alleged collision, which did not occur, and the injury. Crone v. United Rys. Co., 236 S. W. 654. (7) Defendant's instructions were proper, because even under a general allegation in a negligence case the instructions must formulate the issue and submit to the jury for a finding the particular negligent acts which the evidence tends to prove. Allen v. Transit Co., 183 Mo. 435; Miller v. United Rys. Co., 153 Mo. App. 546; Sommers v. Transit Co., 108 Mo. App. 324; Lesser v. Railroad Co., 85 Mo. App. 226; Mulderig v. Railroad Co., 116 Mo. App. 655. Moreover, the instructions should be confined to the casual negligence charged in the petition. Crone v. United Rys. Co., 236 S. W. 657. (8) It is always proper to consider evidence in the light of physical facts, and such verbal evidence as is in conflict with well-known physical facts should be rejected. Lange v. Met. St. Ry., 151 Mo. App. 505; Hook v. Mo. Pac. Ry. Co., 162 Mo. 569; Spiro v. Transit Co., 102 Mo. App. 261; Spain v. Ry. Co., 190 S. W. 361; Kelsey v. Railway Co., 129 Mo. 362. (a) Instruction 5, telling the jury they might consider physical facts, if any, reflects the proper

rule on the subject and has been approved. In no view could it constitute reversible error. The judgment was reversed because of the refusal of such an instruction in McClanahan v. Ry. Co., 147 Mo. App. 403.

JAMES T. BLAIR, J.—Appellant brought this action for damages for injuries he alleges he sustained while riding as a passenger on a street car operated by employees of respondent. The jury found against him, judgment was rendered accordingly, and this appeal followed.

The allegations of the petition respecting negligence are:

"Plaintiff states that upon taking his seat on the right hand side of said car, adjoining an outside window, which window was open, plaintiff rested his arm upon the window sill and part of said car intended and used for such purposes by passengers seated in a like position on said car and by plaintiff and the cars operated by defendant along and over said line, and that as said car approached a point" (particularly described) "his right elbow was struck by said car against or caught between a truck-stake-wagon, projection thereof or therefrom, while said car was going in a northerly direction, on which plaintiff was a passenger, thereby causing plaintiff's right arm to be severely and permanently injured" in respects set out at length and in particular.

"Plaintiff states that it was the duty of defendant to use the highest degree of care toward the plaintiff whilst plaintiff was a passenger aforesaid on said electric street car; that the injuries thus sustained by the plaintiff were directly caused by the defendant negligently and carelessly permitting the said electric street car on which plaintiff was a passenger, as aforesaid, to come in collision with said truck-stake-wagon, projection thereof or therefrom, as aforesaid, thereby catching plaintiff's elbow, as aforesaid, and injuring him as herein alleged. Plaintiff states that said injuries, collision, striking and

catching of plaintiff's elbow, as aforesaid, were occasioned without any fault on the part of the plaintiff, but by reason of the negligence and carelessness, as aforesaid, of the defendant in permitting its said car, as aforesaid, on said line, at said point, to collide with said truck-stake-wagon, projection thereof or therefrom, as to cause the plaintiff's elbow and arm to be struck, caught and injured, as aforesaid, and thereby inflicting and endangering the safety of passengers on its said street car and cars, and more especially the plaintiff on the said car upon which he was a passenger; that said electric street car so in charge of defendant's agents and employees, [sic] permitted said car to collide, strike and catch plaintiff's elbow against said truck-stake-wagon, projection thereof or therefrom, with great force and violence. . . . "

The answer consisted of a general denial and the following:

"For further answer and defense defendant says that whatever injuries plaintiff may have sustained, if any, were caused by his own carelessness and negligence in allowing his arm to protrude from the window and to project from the side of a moving street car."

The reply was a general denial.

The truck referred to was owned by the Kroger Grocery Company and had been in use hauling bread. Just before the accident, which occurred at about 6:30 a. m. on a July day, the truck had been parked with the rear right wheel against or very near the curb, and the right front wheel a few inches out from the curb. The difference between the treads of the front and rear wheels was such that, parked as stated, the truck stood next the curb and parallel with it. The driver and his helper testified for respondent that two cars passed after they parked the truck and there was a clearance of .four inches. The motorman of the car on which appellant was riding testified to a like clearance. There was no evidence of any marks or scratches on car or truck, and

appellant does not claim to have heard or seen any con-
tact between the truck and the car before his arm was
injured.  He was sitting next the window, fourth from
the front of the car.  The truck was a large one.  The
bed was four and one-half or five feet high.  Along its
sides upright stakes were counter sunk in the side of the
bed so that they did not project.  Inside these stakes
boards were fastened firmly to them.  These did not pro-
ject beyond the stakes at the rear, according to respon-
dent's evidence, though appellant's testimony seems to
imply that they did so.

Appellant testified that he got on the car and seated
himself on the right hand side at the fourth window from
the front of the car.  The window was open.  He says:
"I rested my arm right on the sill like this (illustrating
on rail of witness stand); that is the natural place, and
place you usually rest your arm on those cars when
people rest their arms in those cars.  I put it right down
on the sill there and up against the upright."

"Q.  Just a moment.  Sit right over with that chair;
just stand up and stand (witness illustrates)—you had
your arm up against an upright you say; was there an
upright there?  A.  In back of it.

"Q.  This seat that you occupied had an upright
just to the right of your arm and back even with the back,
has it?  A.  Yes, sir; with the back.

"Q.  And it occupies one window in the car?  A.
One window."

Describing the accident itself he says as "we came
along  .  .  .  the car that I was on struck an automo-
bile truck, it catched my arm, it catched it right here
first" (then describes injury).  "This car was coming
about two or three miles an hour."  He says that after
he was struck he "happened to look out and saw it was
an automobile truck;  .  .  .  it was standing there and
the back end of it extended out towards the track in a
catacornered way; a man stationed on the front of the
car ought to see two or three blocks any way; every-
thing that was in the street;"  "As I sat there, my hand

was right this way (illustrating) on the sill. I was sitting straight up in the car, had my arm against that upright. That comes along and is all out to the outside of the car, attached to that upright that runs horizontally down there, the bars run parallel with the car. The bar is about three or four inches from the sill.

"Q. Would your arm in sitting there—could it go out any further than this rod? A. No, sir; not the way I was sitting.

"Counsel for respondent objected to this as calling for a conclusion and invading the province of the jury. Sustained. Appellant's counsel excepted." The witness then bared his arm and showed the jury (indicating) just the point at which it was caught and (indicating) the exact point of the fracture of the bone. On cross-examination he was furnished a photograph of the car. He was asked:

"Q. And what portion of the truck struck you? A. Well, it extended out from the—towards the car track, and after it hit my arm I looked out and I saw those strips along the side. I don't know whether it was one or two, but my arm laying this way and they come in right over this way, tore the arm open here and jammed me up against the upright.

"Q. Now, this upright is right here, is it not, Mr. Leister? A. Yes, sir.

"Q. That is what you had the back of your elbow against, that upright? A. Yes, sir.

"Q. And your arm was lying inside, you say, of this iron rod? A. Yes, sir.

"Q. And your claim is that something from that truck reached inside and caught your arm? A. The car ran into it and that came right in the car.

"Q. The front end of the car didn't run into the truck? A. From what I seen. I don't know what it done at the back. . . .

"Q. Until you were struck there was no contact with the car, was there? A. No, sir—I don't know whether there was or not.

"Q. You didn't see any part of the car in contact with the truck before you were struck? A. No, sir; I didn't see the truck.

"Q. That part came in there, did it strike this upright against which your elbow was resting? A. It seemed like it came in there, hurt my arm and broke it and slid out.

"Q. And went out of the car again? A. Yes, sir.

"Q. This part of the truck, then, you say that struck you, as the car was passing, this horizontal rod along the truck came into the window? A. Yes, sir.

"Q. Struck your arm and then went back out of the window again? A. It must have been that way.

"Q. Before it got back to this upright behind your arm? A. Yes, sir."

He said again that he didn't see the truck until after he was struck; that he was "looking out the window on the sidewalk, sitting up straight, and had my face toward the pavement, . . . the side the truck was on." "The rear end of the truck came in contact with my arm. Upright stake truck and these strips that runs along the side. Just the strips then came in through the windows came in contact with my arm. Those strips located on the stakes of the truck are on the side, they reach to the back end. I think they are flush with the upright part of the back end. Those strips on the west side of that truck would be flush with the western-most edge of that rear upright post. These strips were wood . . . and are fastened to the side of the stakes.

"Q. A strip on each side? A. Yes, sir, and three strips on the side. It seems one or two came in this window.

"Q. And you state that your arm was clear inside these rods? A. Yes, sir.

"Q. And resting on the window sill? A. On the window sill. And that strip came inside, caught my arm there, pushed it back against this jamb and then went outside the car. Those iron bars that run along

300 Mo.—18

the body of the street car, the first one of those is about four inches apart and there are three of them to a side, three of them above the door jamb. The first one about four inches from the window sill, the next one about four inches above that, the next one about four inches more.

"Q. And so the side of the car would be coming along here? A. Yes, sir, they are parallel with the car.

"Q. And how was your arm resting on that window sill? A. Right that way.

"Q. And it was along here your arm was caught, was it? A. Catched me here and tore this open and catched me there.

"Q. Have you ever ridden on a car with your arm extended out? A. Sir? Q. Have you ever ridden on a car with your arm extended out beyond those bars? A. No, sir.

"I judge the car was going about two or three miles an hour as it was passing that truck coming to Park Avenue where they turn. As to whether I heard any noise of any collision of the car and truck only when it struck did I hear a little noise, only when it struck my arm. I didn't hear the car scrape the truck or the truck scrape the car. It may have been heard inside, but I couldn't hear it on the outside. The windows were open. As soon as I hollered the car was stopped. I do not know how long that truck had been there."

Appellant requested but one instruction on the question of respondent's negligence. This was given. After dealing with the relation between appellant and respondent at the time of the accident, it continued:

"And if you believe from the evidence that the street car on which plaintiff was a passenger (if you believe he was a passenger thereon) collided with the truck-stake-wagon, projection thereof or therefrom, the presumption is that it was occasioned by some negligence of the defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence

and establish the fact that there was no negligence on its part, and that the injury, if any, was occasioned by inevitable accident, or by some cause which such highest degree of care could not have avoided."⁴⁰

Appellant assigns as error the giving of certain instructions and the trial court's refusal to grant a new trial on the ground of newly discovered evidence.

I.   There was no error in refusing a new trial on the ground of newly discovered evidence.   The evidence set up in the motion and affidavits consists of measurements of the truck in question which, it is asserted, would show that if the truck was parked against the curb, as Koste testified, it would have left a space of seven and one-half inches between it and the car upon which appellant was riding.   This case was partly tried once before.   No investigation of the dimensions of the truck seems to have been made prior to that proceeding.   Subsequently, "a month or so before the trial of this case," as his affidavit reads, appellant's counsel called upon the superintendent and manager of the Kroger Grocery & Baking Company to inquire who was in charge of the truck when the accident occurred.   No report of an accident had been made to the Kroger Company, and the superintendent did not have the information desired.   Counsel made no further investigation, but left his card and telephone number with the superintendent, who said he would investigate further and report such discovery as he might make. Nothing was reported and the case went to trial "a month or so" later without objection by appellant.   It is clear no diligence was shown.   In addition, the dedefendant's evidence clearly shows the truck stood so that a passing car left a space of but four inches.   Koste testified to this and it is Koste whom appellant says he desires to impeach by the evidence.   Neither is newly discovered evidence for mere impeachment purposes looked on with favor.   If admitted at another trial it would merely raise the question whether testimony that

a truck was parked next to or against the curb was substantially correct if the truck was two and one-half or three inches from the curb. The evidence proffered is immaterial, cumulative, designed for impeachment only, and that on an immaterial point, and no diligence appears. Certainly, the trial court's discretion was not arbitrarily exercised.

II. (1) Instruction 3, given at respondent's instance, is assailed on the ground that it precluded a recovery by appellant on the theory that he had placed his arm so that it projected from the car window beyond the plane of the side of the car and that re-
Instruction: In Harmony With Plaintiff's Theory. spondent negligently moved the car in such close proximity to the truck that appellant's arm struck it and was injured. It is the law of this State that it is not in every instance that one who permits his arm to project somewhat from a street car window and is injured by its contact with something beside the car, is guilty of such contributory negligence as to bar recovery as a matter of law. [Gage v. Transit Co., 211 Mo. l. c. 152, 153; Smith v. Transit Co., 120 Mo. App. l. c. 333, 334, and cases cited; Francis v. N. Y. Steam Co., 114 N. Y. 380; Covington Ry. v. McCleave, 18 Ky. L. Rep. 1036; Chi. City Ry. Co. v. Rood, 62 Ill. App. 550; Barton v. Railroad, 52 Mo. l. c 254 et seq.] The difficulty with appellant's case is that (1) he pleads a collision; (2) he testifies to a collision, and (3) the only instruction he asks on the merits takes the case to the jury on that theory. He testified that his arm did not protrude from the window and that in the manner in which he was sitting and resting his arm, it not only did not but could not project beyond the bars or rods which guarded the window; that, in fact, he *never* had ridden in a car with his arm so projecting. The record discloses that he demonstrated to the trial court and jury the position he was in. How far his "illustrations" of his position strengthened what he said as to the position of his arm,

the trial court and jury could see and this court cannot. By his course at the trial he definitely excluded from his case, before instructions were asked, the theory he now invokes. The instruction merely confines the appellant's case to the appellant's theory. His own testimony excluded from his case every other theory. The same thing is true of Instruction 4.

(2) Instruction 6 told the jury that respondent was not liable if appellant's injury was the result of accident as contradistinguished from negligence. "Accident" was defined. No objection is made to the form of the instruction. The complaint is that there was no evidence authorizing the giving of such an instruction. Even though it be conceded there was no such evidence, yet appellant's instruction numbered one first brought this accident issue into the case, and he cannot complain of invited error.

*Accident.*

(3) Instruction 5, framed by the court, reads as follows:

"The court instructs the jury that, if you believe the statements of any person testifying in this case are contrary to the physical facts shown to exist by evidence, you should disregard his statements for that reason."

It is argued that this instruction directed the jury, if it found a witness had made any statement, material or immaterial, in conflict with physical facts, to disregard all the testimony of such witness—and that this constituted error. While a jury may reject the whole testimony of a witness who has wilfully sworn falsely as to any material fact, it is not required to do so. The instruction is in a form which might be understood as appellant argues, and would thereby become misleading in ordinary cases. In this case the record discloses a situation with respect to the instruction in question which is not ordinary. Appellant offered no testimony on the merits except his own. He does not complain of the effect of the instruction upon the testimony of respond-

*Instruction: To Disregard Testimony.*

ent's witnesses.   Though it be construed as appellant construes it, yet the instruction does not permit the jury to disregard any statement of appellant unless it first finds that "the statements" of appellant "are contrary to the physical facts shown to exist by evidence."   The jury is thereby required first to find from the evidence physical facts which disprove "statements" of appellant before it is permitted to "disregard his statements for that reason."   The statement of the case shows there is no evidence of any physical fact or facts which conflicts or tends to disprove appellant's testimony or statements, except evidence of those facts which, if found to exist, absolutely negative his testimony that a collision occurred and that he was hurt in the manner he alleged in his petition and to which he testified as a witness.   Under the instruction the jury was not authorized to find any other conflicting physical facts, because there was no evidence of any others.   If they found those which negatived appellant's testimony as to the manner in which he was hurt, that finding ended the case and it became immaterial what view the jury might take of the remainder of his testimony.   It is suggested the jury might have rejected appellant's testimony respecting the manner of injury and then might have found for him on a theory referred to in paragraph II.   Besides what has been said in the paragraph, it may be added that the rejection of appellant's testimony on the merits would have been essential to a recovery on the other theory and that this instruction would aid, rather than hinder, in effecting that rejection.   Appellant's testimony in no wise or particular tended to support such a theory.   The record makes it clear that the giving of the instruction in question worked no prejudice to appellant in this case.   This disposes of the errors assigned.

The judgment is affirmed.   All concur.