EMMA STROH JONES, Respondent, v. ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation, Appellant, No. 43751—272 S. W. (2d) 272.

Court en Banc, November 8, 1954.

*Ely & Ely* and *Robert C. Ely* for appellant.

*Barnhart, Wood & Bransford* and *C. V. Barnhart* for respondent.

BOHLING, C.—Emma S. Jones recovered a judgment for $10,000 against the Illinois Terminal Railroad Company, a corporation, for personal injuries sustained when the automobile in which she was riding was struck by one of defendant's interurban cars. The verdict was signed by ten jurors. The principal controversy on this appeal is whether plaintiff's main instruction was erroneous.

Mrs. Jones, plaintiff, lived in East St. Louis. On Sunday afternoon, August 20, 1950, a fine Summer day, Mr. and Mrs. Gustave Miller (plaintiff's son-in-law and daughter), Mrs. Mary Davis (plain-

tiff's sister), and John Blumer (plaintiff's brother) went for a pleasure ride in Mr. Miller's 1936 Oldsmobile sedan. Mr. and Mrs. Miller, with their infant daughter, occupied the front seat. Mrs. Davis was on the right, plaintiff in the middle, and Mr. Blumer on the left of the back seat.

The accident occurred in Madison, Illinois, at the intersection of Second street, an east-west street, and defendant's north-south single line railroad track. Plaintiff's automobile was traveling east and defendant's interurban car was southbound from Alton to St. Louis. Defendant's track is immediately west of the west curb line and parallels McCambridge avenue, which at that point is U. S. Highway "66-67 By-pass." Defendant's track and McCambridge avenue pass over a viaduct several hundred feet south of Second street. Photographs offered in evidence show that west of defendant's track to the north of Second street was a telephone and electric pole line, then a sidewalk, and then a private residence. Plaintiff had evidence that a line of trees extending north from Second street near the east property line obstructed the view to the north for eastbound travelers on Second street. For eastbound traffic on Second street there was, 7 or 8 feet west of the track, an iron pole with a cross-arm "railroad crossing" sign and an electrically operated warning light, with the words "Stop on red signal," and, 15 feet west of the track, a highway "Stop" sign.

Mr. Miller approached this intersection soon after 4:00 p.m. He, as well as plaintiff, was familiar with the crossing. Mr. Miller stopped with the front bumper of his automobile about even with the highway "Stop" sign. He could see to the south up to the top of the viaduct along defendant's track, but only about 140 or 150 feet (the trees obstructed the view) to the north. He looked in both directions and saw no car or train. The railroad warning signal was not "on," did not show red. The windows of the automobile were down. Mrs. Miller, Mrs. Davis and plaintiff gave corroborating testimony. They did not see or hear any approaching interurban car, or warning by bell, whistle or horn, or by the railroad warning signal. Mr. Miller started ahead, east, and continued to increase his speed. He looked again when the front wheels passed over the west rail of the track, and saw defendant's southbound car about 100 feet to the north. He speeded up trying to clear the track, reaching a speed of about six miles an hour, but when the rear wheels were just off of the east rail, the automobile was struck by defendant's car, pushed off the track, and plaintiff was injured. No one in the automobile said anything during this time.

Plaintiff testified that as they approached the crossing she saw the railroad warning signal, and observed it while the automobile was stopped and until the automobile moved about a car's length ahead, sixteen to seventeen feet, and she passed it. The red light

"wasn't working"; "wasn't lit up." She did not see defendant's car prior to the collision.

Defendant's evidence was to the following effect. The railroad warning signal shows a red light for eastbound traffic on Second street when a southbound interurban car passes the station at Fourth and McCambridge avenue, two blocks, approximately 900 feet, north of Second street, and continues to show red until the car is approximately 600 feet south of Second street, near the top of the viaduct. This warning signal has a "peephole" on the side so the motorman can see whether the light is working. The interurban car stopped at Fourth street for a passenger and Ralph A. Coons, the motorman, saw the warning signal for Second street working while the passenger was boarding the car. The car was equipped with an air horn; and when it passed Third street he started sounding the standard crossing signal for Second street—two longs, a short, and a long. He testified he saw the automobile before it reached the highway "Stop" sign; that it did not stop but continued on eastwardly, and when the rear wheels of the automobile were about the center of the railroad tracks, the automobile stopped. He estimated that he had attained a speed of not over 18 to 20 miles an hour from his start at Fourth street and that the car was about 35 feet to the north when the automobile stopped on the track. He immediately applied the emergency brake, threw it over into "big hole" to give the greatest amount of air to stop the car. The car is about 50 or 52 feet in length, and when it stopped, the rear end was even with the south curb of Second street. Leo Watson, defendant's conductor, Mr. and Mrs. James Hall and Tillie Nornberg, passengers on the car, testified that the horn of defendant's car was being sounded; that the signal light at Second street was working, showing red for eastbound traffic, and one witness stated that had the automobile kept on going it would not have been struck.

Plaintiff pleaded but did not predicate a recovery on the failure of defendant's warning signal to function. One of defendant's submitted factors on contributory negligence was plaintiff's failure to see and heed the warning given by said signal and to warn the driver of the automobile that a train was approaching.

Defendant's main attack is against the clause italicized below in plaintiff's sole verdict directing instruction, reading:

"The Court instructs the jury that the defendant railroad company did not have an absolute and unqualified right of way at the crossing mentioned in evidence, but owed the duty to exercise ordinary care to avoid a probable accident thereat, which duty commenced as soon as defendant's motorman knew, or had reason to apprehend that a vehicle approaching the crossing apparently would not stay out of danger *and the Court further instructs you that the defendant railroad company was not relieved from such duty to exercise ordinary*

*care to avoid a probable accident by having erected and maintained a properly functioning automatic warning signal at said crossing.*

"Therefore, * * if you find and believe from the evidence * *," in effect, that "on the occasion in question" there was, prior to said collision, "probable danger of a collision" between the interurban car and the automobile; that defendant's motorman knew of such danger in time thereafter to have avoided said collision by either stopping or slackening the speed of said car; that the motorman failed to avoid the collision and in failing to so stop or slacken the speed he failed to exercise ordinary care, then, by reason thereof, the defendant was negligent, and, if said negligence caused or contributed in part with negligence, if any, of Gustave Miller to cause plaintiff's injuries, the verdict should be for plaintiff and against the defendant.

The humanitarian doctrine as applied in Missouri, permitting of a recovery for negligence on the part of a defendant notwithstanding contributory negligence on the part of a plaintiff, is not recognized in Illinois. Connole v. East St. Louis & S. R. Co., 340 Mo. 690, 102 S. W. 2d 581, 585[3-5]; Meredith v. Terminal R. Ass'n, Mo. App., 257 S. W. 2d 221, 225[4]. Nor is the last clear chance doctrine the law in the State of Illinois. Specht v. Chicago City R. Co., 233 Ill. App. 384, 388.

Plaintiff predicated a recovery on defendant's primary negligence and plaintiff was not entitled to recover if she were contributorily negligent. Cases supra; Bryan v. Sweeney, Mo., 256 S. W. 2d 769, 773[2], citing cases; Cox v. Terminal R. Ass'n, Mo. App., 43 S. W. 2d 571, 575, affirmed, 331 Mo. 910, 55 S. W. 2d 685; Philippi v. New York C. & St. L. R. Co., Mo. App., 136 S. W. 2d 339, 343[11].

What was the effect of the statement that defendant was not relieved from its duty "to exercise ordinary care to avoid a probable accident by having erected and maintained a properly functioning automatic warning signal at said crossing"? Plaintiff says it was immaterial whether the signal was functioning in determining defendant's negligence. The fact that the signal was functioning was a part of the res and its weight was for the jury in passing on defendant's negligence. The instruction did not stop with directing a finding that defendant was negligent, but directed a verdict for plaintiff. Plaintiff was not entitled to a verdict if she were contributorily negligent although defendant was actionably negligent. She testified she watched this warning signal as the automobile approached the crossing, while it was stopped, and until she passed the signal as the automobile proceeded eastwardly. If, as stated in the instruction, the signal was functioning, plaintiff was charged with knowledge of its warning. Tietz v. New York, C. & St. L. R. Co., Mo., 250 S. W. 2d 486, 488[3-5]; Greenwald v. Baltimore & O. R. Co., 332 Ill. 627, 164 N. E. 142, 144; Monken v. Baltimore & O. R. Co., 342 Ill. App. 1, 95 N. E. 2d 130, 132[2]. Plaintiff admittedly did not warn the driver of the automobile

of the danger conveyed by the properly functioning signal as she was required to do under the Illinois cases of Dee v. City of Peru, 343 Ill. 36, 174 N. E. 901, 904[5,9]; Pope v. Illinois Term. R. Co., 329 Ill. App. 62, 67 N. E. 2d 284, 289[7]; Price v. Chicago & E. I. R. Co., 270 Ill. App. 111, 116.

Counsel for plaintiff argued to the jury, among other things, that the court had instructed them the railroad was not relieved of its duty even though it maintained a properly functioning light; "so what is it for you to determine?" Also: "and the court tells you they weren't relieved of that duty even though there was a stop sign there, a warning signal, and even though it was properly functioning; isn't the law in black and white. Isn't the plaintiff in this case entitled to recover? Do they have any defense in this case on the law that Judge Walsh has given you in this case?" We think a jury would construe the instruction as counsel for plaintiff expounded it to them. The instruction is misleading and calculated to minimize the effect of defendant's evidence and cause the jury to believe it should not consider, in determining whether plaintiff was contributorily negligent, that the railroad automatic warning signal was properly functioning. Cameron v. Small, Mo., 182 S. W. 2d 565, 570[15], affirming, Mo. App., 175 S. W. 2d 177, 182[9,10]; Fowlkes v. Stephens, 342 Mo. 247, 114 S. W. 2d 997, 998[1]; Lammert v. Wells, 321 Mo. 952, 13 S. W. 2d 547, 548[3]; Dawes v. Starrett, 336 Mo. 897, 82 S. W. 2d 43, 58[8].

Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. 2d 648, 653(I), is cited by plaintiff as being the nearest in point on the instant issue. It does not aid plaintiff. The instruction in that case was to the effect that defendant had not pleaded contributory negligence as a defense; that no such issue was before the jury, and that the jury was not called upon to consider any question of negligence on the part of plaintiff, et cetera. After a lengthy discussion in reaching the conclusion that the record presented no issue of negligence on the part of plaintiff and the instruction did not constitute prejudicial error, the court stated it was not commending or approving such instructions. In the instant case plaintiff's contributory negligence was defendant's defense and was the hotly contested issue submitted to the jury for determination.

We think we need not develop the other contentions of defendant. The instruction may be readily redrafted to eliminate the objection, in substance, that it unduly extended the "probable danger" zone. We think it subject to this criticism, especially with the questioned clause of the first paragraph embodied in the instruction. Plaintiff, conceding the impropriety of a question objected to by defendant, contends reversible error was not committed. That situation should not again develop.

The judgment is reversed and the cause remanded.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court en Banc.

*Leedy,* Acting C. J., *Dalton, Hollingsworth, Hyde,* and *Ellison,* JJ., and *Anderson,* Special Judge, concur.